[Cite as *In re L.R.*, 2017-Ohio-7232.]

STATE OF OHIO      )
                 )ss:
COUNTY OF SUMMIT     )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: L.R.
        P.R.

C.A. No.       28569

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.     DN 14-5-312
                DN 15-6-357

DECISION AND JOURNAL ENTRY

Dated: August 16, 2017

CALLAHAN, Judge.

{¶1} Appellant, P.R. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to two of his minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Father is the biological father of L.R., born March 21, 2013; and P.R., born May 27, 2015. Father has two other children who live with their mother and were not at issue in this case. The mother of L.R. and P.R. ("Mother") did not appeal from the trial court's judgment.

{¶3} CSB first became involved with this family before P.R. was born. On May 15, 2014, Akron Police removed then one-year-old L.R. from the custody of her parents pursuant to Juv.R. 6. While L.R. was strapped into a car seat in the back seat of a vehicle, Mother and

Father were caught in the process of injecting heroin. Father was later convicted of heroin possession and endangering children, but was placed on two years of community control.

{¶4} L.R. was later adjudicated a neglected child and placed in the temporary custody of her maternal grandfather under an order of protective supervision by CSB. The primary case plan goal for each parent was to engage in substance abuse treatment and drug testing and ultimately demonstrate a sustained period of sobriety.

{¶5} CSB's initial reunification efforts focused on Mother because Father's whereabouts were often unknown, he did not consistently visit L.R., and he did not comply with the case plan. During the first year of this case, Mother ended her relationship with Father, engaged in ongoing drug treatment, and demonstrated sustained sobriety and other progress on the goals of the case plan. After P.R. was born, he was adjudicated a dependent child, but was allowed to remain in Mother's custody under an order of protective supervision.

{¶6} Two months later, L.R. was returned to Mother's custody under an order of protective supervision. Protective supervision was eventually terminated and the case was closed. One month later, however, the case was reopened after the children were again removed pursuant to Juv.R. 6. Mother and Father had rekindled their relationship and both were arrested on charges of drug possession. Although temporary custody was again extended, Mother did not successfully complete another drug treatment program, but continued to struggle with drug addiction throughout the remainder of this case.

{¶7} During the first two years of this case, Father made little progress toward reunification. He failed to comply with the requirements of the case plan and repeatedly violated the conditions of his community control by refusing to submit to drug testing, testing positive for drugs, and/or failing to regularly report to his probation officer. During February 2015, Father

violated his community control by committing domestic violence against the paternal grandmother. Father was released on bond but still did not comply with the substance abuse requirements of his community control or the case plan.

{¶8} During early 2016, Father was involved in the incident of drug possession and domestic violence with Mother that resulted in the children again being removed from Mother's custody. That community control violation resulted in Father being incarcerated for five months, after which he was ordered to complete a 90-day residential drug treatment program.

{¶9} CSB and the guardian ad litem ultimately moved for permanent custody of both children, alleging various grounds under R.C. 2151.414(E). Following a hearing on the motion for permanent custody and Father's alternative request for legal custody, the trial court found that the children could not or should not be returned to either parent and that permanent custody was in their best interest. Consequently, it terminated parental rights and placed the children in the permanent custody of CSB. Father appeals and raises two assignments of error, which will be addressed together for ease of discussion.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THE CHILDREN COULD NOT OR SHOULD NOT BE RETURNED TO EITHER PARENT PURSUANT TO [R.C.] 2151.414(E)[.]

### ASSIGNMENT OF ERROR II

THE [TRIAL] COURT [ERRED] IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AND DENYING FATHER'S MOTION FOR LEGAL CUSTODY[.]

{¶10} Father challenges the merits of the permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving

agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶11} The trial court found that CSB satisfied the first prong of the test because Father demonstrated a lack of commitment to his children "by failing to regularly support, visit, or communicate with the child[ren] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[ren.]" R.C. 2151.414(E)(4). Through his first assignment of error, Father challenges that finding.

{¶12} The trial court's finding about Father's lack of commitment to his children was supported by clear and convincing evidence. For the first two years of this case, Father demonstrated an unwillingness or inability to resolve his drug problem or comply with other requirements of the case plan that might have enabled him to provide L.R., and later P.R., with an adequate permanent home. Throughout those two years, in violation of court orders in this case and his criminal case, Father failed to engage in drug treatment or submit to regular drug testing, but instead continued to use heroin and other illegal drugs. Father also failed to regularly visit his children and did not maintain contact with the caseworker or the guardian ad litem to inquire about the children.

{¶13} This case was extended as long as it was because Mother, not Father, had made progress on the reunification requirements of the case plan. Father not only failed to work on his own sobriety or other case plan goals for two years, but he ultimately undermined Mother's ability to provide a suitable home for the children. Mother had ended her relationship with Father, worked to achieve and maintain sobriety, and had been able to retain custody of newborn P.R. and regain custody of L.R. Mother lost custody of both children, however, after Father came back into her life and began using heroin with her.

{¶14} Father was eventually forced to engage in drug treatment. After Father was charged with heroin possession and domestic violence with Mother, he was incarcerated. He first became involved in drug treatment while serving a five-month period of incarceration, followed by 90 days of court-ordered residential drug treatment. By the time of the hearing, Father had maintained sobriety outside of an institutional setting for only a few months and was still under orders of two courts to do so. The trial court reasonably concluded that Father had demonstrated a lack of commitment to his children by demonstrating an unwillingness to work toward reunification with his children.

{¶15} Father also challenges the trial court's finding that permanent custody was in the best interest of both children. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the need for permanence in the child's life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶16} Father's ability to interact with L.R. and P.R. during this case was limited to supervised, weekly visits because he never demonstrated a sustained period of sobriety. During

the first two years after CSB filed its complaint, Father visited only sporadically. Although Father had been visiting the children regularly during the few months before the hearing, CSB remained concerned that he had not demonstrated a sustained period of sobriety and that the children were too young to protect themselves if Father relapsed. Father had recently become involved in a live-in, romantic relationship with another recovering drug addict, but had been unwilling to provide CSB with any information about her.

{¶17} On the other hand, the children had been living in a safe and stable home with the foster family for almost one year. The children had adjusted to that home and were closely bonded with both foster parents. The foster parents were interested in adopting both children. The guardian ad litem emphasized that the children had found a stable home for the first time in their lives.

{¶18} At the time of the hearing, L.R. was only three years old and P.R. was not yet two. L.R. had told the guardian ad litem that she did not want to live with Father because she remembered him being mean to her mother. The guardian ad litem opined that permanent custody was in the best interest of both children because Father had a history of relapsing, had not demonstrated a sustained period of voluntary sobriety, and was living with another recovering addict.

{¶19} The custodial history of L.R. and P.R. had included moving in and out of temporary placements. They first found stability in the home of their current foster parents. At the time of the hearing, they had lived in that home for nearly one year and were in need of a legally secure permanent placement. It was not disputed that Mother continued to struggle with substance abuse and was not able to provide the children with a suitable home. Although Father

contends that he was prepared to provide his children with a stable home, he had demonstrated only a few months of sobriety, and had never had legal custody of either child.

{¶20} Father has failed to demonstrate that the trial court's permanent custody decision was not supported by clear and convincing evidence. Consequently, his two assignments of error are overruled.

### III.

{¶21} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CONCUR.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.